The judgment of the court (Preston, J. declining to sit on the cause on account of interest,) was pronounced by
Slidell, J.
This suit is brought upon coupons or interest warrants attached to bonds of the State, delivered to the Citizens’s Bank in order to facilitate it in the negotiation of a loan, and which, both principal and interest the bank, by its charter, was bound to pay as they matured. The only question presented for our decision is, whether the bank is bound to pay twelve dollars, or only eleven dollars and eleven cents for each of these coupons.
The bonds and dividend warrants out of which this controversy has arisen are of the following tenor: “ Citizens’Bank of Louisiana. A. No. 1712. $444 44 — (Bond for ¿6100 sterling) — 1200 guilders. Know all men by these presents, that the State of Louisiana acknowledges-to be indebted to the Citizens’ Bank of Louisiana in the sum of one hundred pounds sterling, ($444 44 — 1200 guilders,) which sum the said State of Louisiana promises to pay to the order of the president and directors of the said bank on the first day of February, 1850, with interest at the rate of five per centum per annum, payable half yearly, at the place and in the current money named in the endorsement hereto, to wit, on the first day of February and the first day of August of every year, until the payment of said principal. In testimony whereof, the Governor of the State of Louisiana has signed, and the Secretary and Treasurer of State have countersigned these presents, and the seal of the State has been affixed thereto, at New Orleans, this first day of February, in the year of our Lord eighteen hundred and thirty-six, and of the Independence of the United States the sixty-first. (Signed) E. D. White, Governor. (Signed) Martin Blache, Secretary of State. (Signed) F. Gardere, State Treasurer.”
The bonds were endorsed as follows: “We, the undersigned, Edmond J. Forstall, President, and J. B. Perrault, Cashier, of the Citizens’ Bank of Louisiana, for value received, do hereby endorse and transfer the within bond of one hundred pounds sterling, bearing interest at the rate of five per cent per annum, to the order of-; and do hereby bind the Citizens’ Bank of Louisiana to pay the said interest half yearly, viz: on the first day of February and the first day of August of each year, in the city of Amsterdam, at the counting house of Messrs. Hope 8$ Co., at the rate of twelve guilders per pound sterling, upon presentation and delivery of the dividend warrant in the margin hereof; and also do bind the said Citizens’ Bank of Louisiana to reimburse the principal in Amsterdam, at the counting house of the said Messrs. Hope 8f Co., at the rate of twelve guilders per pound sterling, upon presentation and delivery of this bond, on the day when this bond becomes due. New Orleans, this first day of August, 1836. (Signed) Edmond J. Forstall, President. (Signed) J. B. Perrault, Cashier.”
The divident warrants attached to the bonds were to the following effect: “No. 28. Thirty guilders, being six months dividend on one hundred pounds sterling, due 1st February, 1850, payable in Amsterdam at the counting-house of Messrs. Hope & Co. No. 1712. J. B. P., Cashier.”
The form of the body of the bond was prescribed iotidem verbis in the act of 1836, being the amendatory charter of the Citizens’ Bank. The endorsement *722 ¡g in accordance with the authorization contained in the second section of that act which reads as follows : “ the said bonds may be transferred, by the endorsement of the president and cashier of the bank, to the order of any person whatever or bearer, and the said endorsement shall fix the current money and the place at which the principal and interest shall be paid from the funds of the bank.”
For a number of years the plaintiffs, who reside in Paris, have been extensively engaged in the purchase of coupons or interest wamints attached to these bonds. It is admitted that the plaintiffs purchased the coupons in question in the European markets, either after they had fallen due or shortly before maturity; that the plaintiffs were fully aware of the tenor and endorsements of the bonds to which the coupons were attached when they purchased them; and that they were never presented for payment at the counting bouse of Hope Sf Co. at Amsterdam, nor any where else, until they were paid by the Citizens’ Bank at New Orleans.
During the years 1844, 1845,1846 and 1847, and up to the 23d November, 1848, no funds had been placed by the Citizens’ Bank in the hands of the house of Hope Sf Co. at Amsterdam, to meet the payment of the interest falling due semi-annually on the bonds. It is also admitted that the Citizens’ Bank has paid, at its counter in New Orleans, from the 16th May, 1843, to the 23d November, 1848, one hundred and sixteen thousand two hundred and ten coupons, amounting to the sum of $1,291,093 10, at the rate of eleven dollars and eleven cents for thirty guilders; and that no other or higher rate has ryVer been claimed by any of the holders of coupons, except the plaintiffs, in (October, 1847; nor has any higher rate been either claimed or paid since that time.
It appeal’s that from the 26th April, 1846, to the 16th October, 1847, the plaintiffs presented for payment at the counter of the bank in New Orleans; fifteen thousand three hundred and forty-three coupons, for which they claimed and were credited on account at the rate of eleven dollars and eleven cents, amounting to $170,460 73.
In October, 1847, the plaintiffs set up a claim to be paid twelve dollars for each coupon of thirty guilders. An arrangement was then made by which the plaintiffs agreed to receive credit on account for their coupons as heretofore, reserving to themselves the right of suingfor the difference which they claimed, provided the suit should not be instituted within a year from that date.
The suit was originally brought for the recovery of $23,123 09, being the difference in the amount paid, and that to which they allege themselves to be entitled on all the bonds which had been paid to them; but it was afterwards so far discontinued as to limit the claim to $9,467 82, the difference on the series of coupons paid since the 16th October, 1847, up to the institution of the suit.
The act of Congress of 14th July, 1832, in force at the date when these bonds were issued, declares that the pound sterling shall be estimated at four dollars and eighty cents, in the computation of duties. This rate was increased by the act of 27th July, 1842, to four dollars and eighty-four cents. The act of 2d March, 1799, fixed the rate of guilders at forty cents, at which rate they are still computed in the customhouse. Gordon’s Dig. p. 647, No. 2188.
It was also proved on the trial, that the value in commerce of guilders and pounds sterling in the United States, was about equal to the rates thus fixed by Congress. The court below sustained the claim of the plaintiffs, giving them judgment for $£¡467 82, being at the rate of twelye dollars for each coupon of thirty guilders. The defendants appealed.
*723 The defendants insist that they should have been compelled to pay only at the rate of eleven dollars and eleven cents; and they attempt to deduce this proposition from the figures $444 44, used at the head and in the body of the bond. By this they say, “ the relative value of the different currencies of the United States, England and Holland is fixed in the body of the bonds, with a full knowledge of which the plaintiffs purchased the dividend warrants in question.”
If these figures meant that in case the bond was by endorsement made payable in the United States, it should represent a sum of $444 44, and create an obligation to that extent: the contract is, on its face, a reasonable one. But if it meant that in case the bond was made payable in a foreign country, the debtor should have the liberty of paying an obligation of one hundred pounds sterling, or twelve hundred guilders, with $444 44 of United States money, the Legislature must be considered as having proposed to the capitalist an unbusinesslike and anomalous contract.
The true intention of the contracting parties is to be mainly sought in the endorsement of the bond and in the form of the warrant. The bond expressly points to the endorsement. Its language is “ with interest at the rate of five per cent per annum, payable at the place and in the current money named in the endorsement.” When we turn to the endorsement, not a word is said of the currency of the United States. It transfers a “ bond of one hundred pounds sterling,” and fixes unequivocally and unqualifiedly the place and rate of payment. The interest is to be paid “in the city of Amsterdam,” “at the rate of twelve guilders per pound sterling.” This payment is to be made upon the presentation, not of the bond, but of the warrant only. That warrant (or coupon) is an unqualified promise to pay at Amsterdam, on a certain day, what? Not dollars, but guilders. With what show of justice, under such a contract, could an agent of the bank appear, at the maturity of such a warrant, at the house of Hope 8f Co. in Amsterdam, and tender the holder eleven dollars and eleven cents in American coin, instead of thirty guilders, of which the real value was twelve American dollars?
In this, as in any other contract, we must search for the intention of the parties. Certainly, any one taking the warrant would not expect to receive a less value than thirty guilders; and on the other hand, we do not consider the obligor as expecting to pay less. The proposition maintained by the appellants is, that the currencies are alternative or convertible. But we concur with the plaintiff’s counsel, that it was not the intention of the Legislature to permit the bonds to be issued as convertible or alternative. He has properly argued that the parlicular form was adopted to prepare them for the principal European markets, in which it was expected they would be negotiated, namely, London and Amsterdam. The three currencies were inserted to give the bank and its customers the selection of any one of them. This selection was to be made when the bond was negotiated, and to be established by the endorsement of the bond. By that endorsement the bond becomes definitively payable in the money named in it.
What was the motive which led to this contract on the part of the State, and the object intended to be effected by it? The answer is obvious. It was the desire of the State to facilitate the bank in raising money at home or abroad, and it was the interest of the bank that the bonds should have such a form as would make them acceptable to capitalists. It is certain that their market value would have heen sensibly impaired if, after negotiation, the three currencies *724 remained convertible, so that the bank could tender guilders to the English. creditor, or dollars to the German.
W e therefore conclude, that the plaintiffs were entitled to receive thirty guilders in Amsterdam. The bank having failed to perform its contract, there, and the creditor being obliged to sue here, he ought to have just as much allowed him here as he would have had if the contract had been duly performed. Equity forbids that a debtor should be enabled, by his own default, to diminish his obligations. See Kent’s Comm. vol. 3, 117. Scott v. Bevan, 2 Barn. & Adol. 78.
But, say the defendants, whatever might have been the right of the plaintiffs to claim thirty guilders, or the equivalent thereof, if the coupons had been presented for payment at their maturity at the counting house of Hope <%• Co. at Amsterdam, no such pretension can be sustained when, as in the present instance, they were voluntairly presented for payment and paid in the United States. The answer is, the presentation here was not voluntary. For several years the bank had utterly neglected to place funds in the hands of Hope Co. at Amsterdam, as it was bound to do; and it would have been a vain expense, trouble and risk for the plaintiffs to have sent their coupons there to have a demand made which would have been met with the answer of “no funds.” It is true, that decisions of our predecessor may be found which sanction the position assumed by the appellant; but this court has considered itself compelled by the weight of reason and authority to adopt the equitable rule, that the holder of a negotiable promise to pay money need not show a demand at the appointed place when no funds have been provided there by the debtor. See Bent v. Lauve, 3d Ann. 90. Ripka v. Pope, ante p. 61.
In conclusion, we remark that the fact of the acquiescence of the plaintiffs in the redemption of other coupons at a lesser rate, is no defence to his recovery of what is lawfully due upon the obligations now before us. The opinion hitherto entertained by the bank, or the plaintiff or other holders of these coupons, may be entitled to some consideration as an opipiop, but certainly cannot control the legal effect of the obligation. And we may observe, that the fact of this former acquiescence is mu,ch less significant when we remember the disordered condition of the bank, which threw its obligations upon the market, at a great discount, so that holders were contented to realize what the bank would allow.
Judgment affirmed, with costs.